IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROVER PIPELINE LLC,

Plaintiff,

v.

ROVER TRACT NO. PA-WA-HL-004.500T *COMPRISED OF PERMANENT EASEMENT(S) TOTALING 0.9 ACRES, MORE OR LESS, AND TEMPORARY EASEMENT(S) TOTALING 1.33 ACRES, MORE OR LESS, OVER A PARCEL OF LAND IN HANOVER TOWNSHIP, WASHINGTON COUNTY, PENNSYLVANIA, TOTALING 49.571 ACRES, MORE OR LESS,*

JAMES M. BUCHANAN AND DIANE ZACK
BUCHANAN FARM #4 LP

ET AL.,

Defendants.

17cv0170
ELECTRONICALLY FILED

**MEMORANDUM OPINION**

**I. Background**

This condemnation case was brought by Plaintiff ("Rover"), pursuant to the Natural Gas Act, 15 U.S.C. § 717 et seq., and 15 U.S.C. § 717f (h), and Federal Rule of Civil Procedure 71.1 ("Rule 71.1"). ECF 1. In its Complaint, Rover sought an order of condemnation for a permanent pipeline, temporary work space, surface site, permanent and temporary road access, and other rights-of-way and easements, which would enable Rover to enter, commence, and complete clearing, construction, and restoration efforts on Defendants' properties, while the amount of just compensation due to Defendants for the taking was resolved. Id. Subsequent to

the filing of the Complaint, most of the named Defendants reached a settlement with Rover concerning just compensation, and thus, their claims were not adjudicated.

For those Defendants who could not reach a settlement with Rover as to just compensation, this Court appointed a three-person Commission in accordance with Rule 71.1.[1] Pursuant to the Court's Order and Rule 71.1, tasking the Commission with determining the just compensation due and owing to the remaining landowner-Defendants by Rover.

In order to arrive at the just compensation due and owing to the Buchanan Farm, the Commission: conducted conference calls, held conferences, obtained expert valuation reports from the Parties, reviewed briefs submitted by the Parties in support of the valuation reports submitted, personally toured the Buchanan Farm and the surrounding areas, held a hearing which was transcribed by a certified court reporter, and reviewed the Parties' proposed findings of fact and written closing statements.[2] Subsequently, the Commission issued its Report (ECF 108) containing findings of fact and conclusions of law and ultimately, arrived at the just compensation due and owing to the Buchanan Farm.

The Commission determined that the fair market value of the land prior to the taking was $790,048.00 [$6,400 x 123.445 acres]. ECF 108. The Commission also determined that the fair market value of the land as of the date of the taking was $419,713.00 [$3,400 x 123.445 acres]. ECF 108. By subtracting $419,713.00 from $790,048.00, the Commission arrived at a just

[1] When a landowner of two tracts of land could not settle with Rover, Rover filed a Motion to Appoint a Commission pursuant to Rule 71.1. ECF 83. The owner of the two tracts of land, hereinafter "the Buchanan Farm," filed an Objection in Opposition to the Appointment of a Commission (ECF 86), and Rover filed a Response. ECF 87. This Court granted Rover's Motion to Appoint a Commission. ECF 89. The Commission was comprised of two real estate attorneys, experienced in condemnation and other real estate matters, as well as a former Pennsylvania Common Pleas Court Judge.

[2] During the two-day hearing, the Commission heard testimony from Rover's witness and representatives, Richard Huriaux, Chris Lason and Mathew Florian, as well as testimony from the Buchanan Farm witnesses, Diane Buchanan and James Buchanan. Expert testimony for each Party was presented by way of video-taped depositions.

compensation for the condemnation of the Permanent Easement as of the date of the taking (February 24, 2017), to be $370,335.00. ECF 108. However, after adding $4,224.00 as just compensation for the Temporary Work Space Easement, and subtracting the $65,628.00 Rover paid to the Buchanan Farm for immediate access on February 23, 2017, the Commission determined that Rover owed the Buchanan Farm $308,931.00 (370,335.00 + 4,224.00 – 65,628.00). ECF 108.

Both Rover and the Buchanan Farm filed Objections and a Motion to Modify to the Report. ECF 111 and ECF 113. After a thorough review of the work of the Commission, this Court overruled all of the objections raised by both Parties and adopted the findings of the Commission as set forth immediately above and ordered Rover to pay the Buchanan Farm $308,931.00. ECF 129. Rover appealed this Court's Order. ECF 132.

On appeal, the Court of Appeals for the Third Circuit affirmed all but the pre-taking value ($790,048.00) set by the Commission and adopted by this Court. ECF 137-2. The Court of Appeals specifically held, "[T]he Commission's pre-taking valuation was inflated by the farm's potential for multi-family development, a use that Rover's pipeline made less feasible. See App. 97–100. But that use was barred by Hanover's zoning designation, which was unlikely to change." ECF 137-2, p. 9. Given its determination on this singular point, the Court of Appeals remanded the matter back to this Court instructing this Court to "identify an appropriate pre-taking best use." Id.

The Parties submitted cross-briefs on the pre-taking best use of the subject property and also filed cross-responses. ECF 141, ECF 142, ECF 143, ECF 144. The matter is now ripe for adjudication.

## II. ANALYSIS

### A. Highest and Best Use as Defined by Law

This Court begin its analysis by summarizing the law surrounding highest and best use to arrive at a pre-taking value.

"The guiding principle of just compensation . . . is that the *owner* of the condemned property 'must be made whole but is not entitled to more.'" *United States v. 564.54 Acres of Land*, 441 U.S. 506, 516, (1979) (emphasis in original) (quoting *Olson v. United States*, 292 U.S. 246, 255,); *see also United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 341 (6th Cir. 1993) ("[O]vercompensation is as unjust to the public as undercompensation is to the property owner, and the landowner bears the burden of proving the value of the land." (citing *United States v. 69.1 Acres of Land*, 942 F.2d 290, 292 (4th Cir.1991))).

In a condemnation proceeding, just compensation is the difference between the fair market value of the condemnee's property immediately before and after the condemnation. 26 Pa. Const. Stat. § 1-602(a). Fair market value is the price that a willing and informed seller and buyer would agree to, taking into consideration the highest and best reasonably available use of the property and its value for such use. 26 Pa. Const. Stat. § 1-603.

Fair market value is determined by considering the subject property's "highest and best use." *U.S. v. 275.81 Acres of* Land, 2013 WL 989956, * 3 (W.D. Pa March 13, 2013). Specifically, the just compensation clause requires that "condemnees receive the value of the highest and best use for which the property is adaptable in the reasonably near future from the vantage point of the date of the taking." *United States v. 68.94 Acres of Land*, 918 F.2d 389, 393 (3d Cir. 1990) (citing *Olson v. United States*, 292 U.S. 246, 255, (1934)). Although the

factfinder should not entertain mere speculative uses of the property, "evidence of a potential use should not be excluded merely because it depends upon the existence of extrinsic conditions." *Id.*

The Supreme Court of Pennsylvania has set forth two requirements for proving the highest and best use of property: (1) the condemnee must show that, at the time of condemnation, the land was physically adaptable to a particular use; and (2) there was a need, or market, for the use in the area. *Pennsylvania Gas & Water Co. v. Pennsylvania Tpk. Comm'n*, 236 A.2d 112, 116 (Pa. 1967). "This second test, however, does not require that the condemnee himself convert the land to its highest and best use." *Id.*

More recently, the Commonwealth Court of Pennsylvania noted:

> Where an owner's actual plans for property affect the property's highest and best use, the plans are relevant and generally are admitted into evidence. 5 Nichols on Eminent Domain § 18.05[3] (1997). The intention of an owner in purchasing a property and the completion of preliminary steps in the development of the property can remove the matter of highest and best use from the realm of conjecture and speculation into reality. 4 Nichols on Eminent Domain § 12B.14[3].

*King v. W. Penn Power Co.*, 946 A.2d 184, 189 (Pa. Cmwlth. Ct. 2008).

As noted by the Court of Appeals in its Opinion in the instant matter:

> [I]n Pennsylvania, finders of fact may value a property for a best use that is barred by current zoning designations. *Redevelopment Auth. v. Lieberman*, 336 A.2d 249, 255 (Pa. 1975); *see also* 26 Pa. Const. Stat. § 703 (providing that "[f]air market value" includes "[t]he highest and best *reasonably available use* of the property" (emphasis added)). But to do so, they must identify evidence that those designations are reasonably likely to change. *See Redevelopment Auth.*, 336 A.2d at 225.

ECF 137-2, p. 8.

Finally, the opinion testimony of a landowner on the valuation of his land has been admitted in federal courts without further qualification. *United States v. 147.47 Acres of Land in Monroe Cty., Pennsylvania*, 352 F. Supp. 1055, 1058-59 (M.D. Pa. 1972). The basis for

admitting such testimony is a presumption of special knowledge arising out of ownership. *Id.* citing, *United States v. 3,698.63 Acres of Land, etc., North Dakota*, 416 F.2d 65, 67 (8th Cir. 1969); *United States v. Sowards*, 370 F.2d 87 (10th Cir. 1966); *United States v. 60.41 Acres of Land, supra; Kintner v. United States*, 156 F.2d 5, 7 (3d Cir. 1946). In *United States v. 68.94 Acres of Land, More or Less, Situate in Kent Cty., State of Del.*, 918 F.2d 389, 397 (3d Cir. 1990), the Court of Appeals specifically stated:

> One authority on eminent domain proceedings has noted,
>
> > [T]he owner of land taken is generally recognized as qualified to express his opinion as to its value merely by virtue of his ownership. The owner is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to render an opinion as to the value of the land.
>
> Nichols, The Law of Eminent Domain § 23.03 at 23–30 (1990) (citations omitted)."

**B. Facts Supporting Highest and Best Use in the Instant Matter**

Initially, the Commission and this Court, through its adoption of the Commission's findings, found that the highest and best use of the subject property was a "multi-family use." The Court of Appeals determined that the evidence of record in this case demonstrated that a multi-family use had been barred by Hanover Township's zoning designation and was "unlikely to change." ECF 137-2, p. 9. Thus, the Court of Appeals held that the Commission's pre-taking valuation was inflated by the farm's potential for multi-family development, "a use that Rover's pipeline made less feasible." Id. On remand, both Rover and the Buchanan Farm submitted analyses for the highest and best use of the subject property outside of a "multi-family use."

In its submissions, the Buchanan Farm admits that at the time of the taking, its land was zoned "R-P" – meaning Rural Preservation District as defined by Hanover Township's Zoning Ordinance. ECF 118-28, p. 31.

The Court notes that one of the many permitted uses for land bearing the R-P designation is "single family dwelling." ECF 118-28, p. 34. The stated purpose for a R-P designation is to "provide for agriculture and low density single family residential development in rural areas of the Township . . . ." Id. The minimum lot area for a single family dwelling within an R-P zone is 2 acres. ECF 118-28, p. 36. Rover's own expert – James Herbig – testified that one home for every two acres of land could have been constructed on the Buchanan Farm property. ECF 117, p. 112. Thus, this Court concludes that as of the date of the taking, the Buchanan Farm was zoned for low density, single family residential development, allowing for one single family dwelling on every two acres of property.

Given that the Buchanan Farm was comprised of two tracts of land – one tract that was 49.57 acres, and another tract that was 73.87 acres[3] – the maximum number of single family dwellings that would have been permitted on the Buchanan Farm at the time if the taking would have been 54. Accordingly, at the time of the taking, the highest and best use of the property was for a low density, single family residential development whereby one home for every two acres of land could be constructed with the maximum number homes being 54, over the two tracts.

[3] James Buchanan testified that he purchased the Buchanan Farm – identified above – in 1996 as an investment. The two parcels described above were once a single farm but were subdivided into two tracts on the date of purchase (in 1996) by the Buchanans. At the time of purchase, the Buchanan Farm was zoned R-1 but there was no pubic sewage to the property. At some point in time subsequent to the purchase of the property but prior to the taking, the Buchanans attempted to have Farm rezoned to a "B-1" designation but were not successful. In addition, after the purchase but prior to the taking, the Buchanan Farm was rezoned from its original R-1 designation to R-P without the Buchanans' knowledge. Subsequent to the taking, the Buchanan's applied to have the land rezoned R-1 and succeeded. ECF 116-1.

Moreover, evidence of record shows that before 2005, the Buchanan Farm was zoned R-1 -- meaning Rural Residential District as defined by Hanover Township's Zoning Ordinance. ECF 118-28, p. 31. The Court notes that one of the many permitted uses for land bearing the R-1 designation is "single family dwelling." ECF 118-28, p. 38. The stated purpose for a R-1 designation is to "preserve natural resources while encouraging low density single family residential development suited to the natural conditions . . . ." Id. The minimum lot area for a single family dwelling within an R-1 zone is 25,000 square feet with public sewage, or 1 acre without public sewage. ECF 118-28, p. 39. In addition, the Court notes that upon request of Buchanan Farm, the R-1 zoning designation was reinstituted unanimously by the Zoning Board with no community opposition. ECF 116-1.

This Court finds that although the Buchanans did not formally attempt to develop the Buchanan Farm into as a residential subdivision, the evidence of record indicates following: (1) the Buchanan Farm was purchased in 1996 as an investment; (2) at the time of purchase, the Buchanans subdivided the property into two tracts with the hope of developing a sewage treatment plant and a 157 residential units; (3) although the Buchanans attempted to get the land rezoned as B-1, this request was denied; and (4) upon learning the land had been rezoned R-P, the Buchanans were permitted to reinstitute the R-1 designation subsequent to the taking.

Simply stated, although zoning designation of R-P, nor an R-1, would not permit a multi-family residential use for the property,[4] these designations did not preclude the Buchanan Farm from the development of multiple, single-family residences being built on the subject property. To the contrary, the zoning designation of R-P would enable the Buchanan Farm to develop up to 54 single family homes on 2-acre lots. The R-1 designation would permit the development of

[4] Multi-family residential use is a single residential building designed for occupancy by three or more families living independently of each other and containing three or more residential units. ECF 118-28, p. 12.

122 single family homes to be developed on 1-acre lots without public sewage, or more if there was public sewage. Each expert (Herbig for Rover, and Barna for the Buchanan Farm) prepared reports and provided testimony concurring that a pre-taking permissible use for the Buchanan Farm would allow for multiple, single-family homes to be constructed on the parcels.

Given that all the evidence of record establishes that the Buchanan Farm (both parcels) was zoned in such a way that the development of multiple, single-family residences could occur (which differs from multi-family residences), the next logical question is what each tract was worth before the taking. At the time of the taking, the two tracts of land at issue were zoned R-P. However, as this Court has noted above, the R-P designation is not the highest and best use of the property. Evidence of record clearly establishes when the Buchanan family bought the Buchanan Farm it was zoned R-1, with no public sewage to the property. After the land purchase, but prior to the taking, the Buchanan Farm was rezoned from its original R-1 designation to R-P. Upon learning of the R-P designation, subsequent to the taking, the Buchanan's applied to have the land rezoned R-1 and succeeded. Thus, the Court concludes that the highest and best use of the land, pre-taking, is predicated upon an R-1 zoning district.[5]

Next, the Court notes that the experts (Herbig for Rover, and Barna for the Buchanan Farm) each proffered their own valuations for the land, and in so doing, both experts employed a sales comparison approach. Barna considered recent sales of large tracts of vacant land in townships close to his own township, which were later developed for residential use. Herbig also considered sales of large tracts of vacant land, but his comparables did not consider any

---

[5] Importantly, the Court of Appeals in its Opinion on this issue noted, ". . . the Buchanan's farm is now zoned for rural residential [R-1] use and was (at the time of taking) zoned for rural preservation [R-P] use, both of which allow only single-family dwellings." ECF 137-2, p. 8. Thus, the Court of Appeals has acknowledged that the evidence of record supports a finding that the Buchanan Farm, pre-taking, could have been developed for single-family dwellings in accordance with the local zoning law.

tracts that were later subdivided for development. Barna's sales comparators were more recent transactions than Herbig's. As the Commission and this Court previously noted, Rover's expert, Herbig, also failed to account for other variables as well. Those variables included the close access the Buchanan Farm had to highways, as well other economic variables which made the Buchanan Farm a more desirable parcel for residential development than Herbig's comparables.

In its briefs, Rover provides excerpts from Herbig's valuation analysis which suggest that the land value per acre is $3,600 for the 49.57-acre tract, and $3,400 for the 73.87-acre tract. Thus, per Herbig, the value of the land of the 49.57-acre tract is two hundred dollars more per acre, pre-taking, than post-taking, and it is the same value ($3,400) pre-taking as post-taking for the 73.87-acre tract.

Because this Court has concluded that Herbig failed to properly consider all of the relevant variables when assigning a pre-taking land value for these two tracts, and because his transactions pre-dated Barna's, this Court will continue to rely upon the values derived by Barna, the Buchanan Farm's expert.

In its briefs, the Buchanan Farm urges this Court to reconsider its prior position on the pre-taking value and find that the land's pre-taking value is greater than what this Court already deemed. This Court has already rejected the notion that the highest and best use of the land, pre-taking, would be to subdivide it into a 157-lot subdivision. The Court finds that there is no new evidence to compel the Court to alter its prior decision so as to increase the number of lots to a 157-lot subdivision thereby increasing pre-taking value of the land. As explained above, the highest and best use of the land as was rural residential (R-1), which would allow for a single-family dwelling per every one acre of land.

Thus, this Court continues to conclude that the pre-taking value is $6,400 per acre based on the fact that the highest and best use of the land in an R-1 zone would be the development of single-family residences on one-acre lots. Accordingly, the fair market value of subject property prior to the taking remains $790,048.00 [$6,400 x 123.44 acres].

**III. Conclusion**

Having analyzed, in detail, the matter of the highest and best use for the subject property, which is for the development of single-family dwellings on once acre parcels under the R-1 (rural residential) designation, this Court has satisfied the instructions of the Court of Appeals. Further, this Court finds that the valuation of the subject property considering the highest and best use of the land in a R-1 zoned district would remain $790,048.00 [$6,400 x 123.44 acres] for the reasons set forth herein. An appropriate Order of Court setting forth just compensation shall follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc: All ECF registered counsel of record
Andrea Geraghty, Esquire
LuAnn Datesh, Esquire
Thomas T. Frampton, Esquire